### EDWIN PARKER *versus* THOMAS B. VOSE & *al.*

A. & B. entered into a contract, by which A. was to advance to B. the means for the building of a vessel, which, when completed, was to be delivered to A. " as his property, as collateral security." A., after her delivery to him, offered the vessel for sale by auction, and she was struck off on the bid of the agent of A. In a suit of A. against B., for the advances, it was *Held:* — *that* B. was not bound by the sale, (if he had not assented to it,) but might show the value of the vessel: — *that* A. could not legally become the purchaser, at such sale: — *that* the legal title to the vessel, being in A. before the sale, the sale to himself or his agent would work no change in the title to the property.

ASSUMPSIT, to recover balance of account. Plea, general issue.

In support of his case, plaintiff offered in evidence, an agreement between him and defendants, dated March 27, 1854, by which defendants, as party of the first part, engaged to build a vessel of a certain description therein specified, "to be de-

Parker *v.* Vose.

livered in Boston, as the property of said Parker, as collateral security."

The plaintiff, as party of the second part, agreed to furnish certain materials, to be used in the construction of the vessel, and also to furnish defendants with certain goods and merchandize, and to make sundry advances in money. "And it is further agreed, by both parties, that in case the party of the first part can sell the vessel at Robbinston, by consent of the party of the second part, and if, on her arrival in Boston, the party of the first part can make sale of the vessel to better advantage than the party of the second part, they shall have liberty so to do, provided the payment comes to the party of the second part for all moneys, acceptances, and all liabilities, commissions, and claims against said vessel."

There was, on the trial, sundry depositions introduced, but no copy of either of them is found among the papers in the case, the originals having been used at the argument and since withdrawn, to be used at the new trial that has been ordered. The opinion of the Court indicates the nature of some of the evidence.

The presiding Judge instructed the jury " that the defendants were bound by the sale [of the vessel] at auction in Boston, whether they assented to it or not." Whereupon, by consent, the case was withdrawn from the jury, to be submitted to the Court on Report of HATHAWAY, J. If the instruction was correct, a default was to be entered; otherwise, a new trial to be had.

*B. Bradbury* for plaintiff.

The vessel was launched in October, 1854, and arrived in Boston during the first days of November following, and was sold at auction on the 28th day of the same month. There is testimony in the case that Vose, one of the defendants, was in Boston some three weeks or more, endeavoring to sell the vessel. Had Parker a right to sell the vessel? The contract contemplates a delivery of the vessel in Boston, for the purpose of being sold. The plaintiff held the vessel, as his

property, as collateral security; he was bound to account to the defendants for the proceeds. The debt was absolutely due him at the time the vessel was launched, and he had a right to avail himself of the proceeds of his collateral security by a sale of the vessel at any moment. He could dispose of her at private sale or public auction.

A reasonable time had been allowed the defendants to effect a sale, and they were unsuccessful in their endeavors to effect any; upon legal principles, then, the plaintiff had the right to sell the vessel.

Was the sale a fair one? Both parties had endeavored to sell the vessel at private sale, but neither party could succeed in doing so. The testimony clearly shows that the vessel was duly advertised; a large company was present at the sale, which was properly conducted, and that the price, at which the vessel was sold, was a fair one for a vessel of her class, at the time of sale. The ingenious counsel for defendants suggested at the trial, as the ground of objection to the fairness of the sale, that the plaintiff himself was the purchaser. F. Rice testified—" I bought the vessel under an arrangement with Parker, and acted as his agent at the time. My instructions from Parker were, that he did not want the vessel sacrificed, and not to let her go to any other party at less than $14000."

It is difficult to perceive, for what reason this purchase by Parker, can invalidate the sale, as between him and the defendants. It is not the case of puffers or by-bidders, by which the auction price is unfairly swollen.

It is not a case between an owner of the property and a purchaser at auction, where the price is enhanced by the bids of the owner's agents; though, in this case, if the agent was employed *bona fide* to prevent a sacrifice of the property, under a given price, it would be a lawful transaction and not vitiate the sale.

Here the plaintiff has two objects; to save himself and save the defendants. It was for the interest of the defendants that he should not permit the property to be sacrificed; and

it is manifest that the defendants realized more for the property than they could have done in any other way. The motive of the plaintiff was laudable; the result beneficial to the defendants. Parsons on Contracts, vol. 1, p. 417 and 418. The sale was a fair one; the plaintiff had a right to make it; and the Court properly said the defendants were bound by it.

The instruction was immaterial. Manson testified, " the plaintiff and Vose had endeavored to effect a sale, and, not being able to get a satisfactory offer, mutually agreed to have her sold at auction at the time and place when and where she was sold."

The defendants, surely, would be bound by such an agreement, and it becomes, therefore, quite immaterial whether plaintiff had a right to sell, without their assent.

As to the equities of the case, it should be observed that the plaintiff has credited the defendants with the sum of $16000 for the vessel, instead of $12,700, the auction price.

*F. A. Pike,* for defendants.

The instruction given was erroneous. There was no sale. Parker set the vessel up at auction, and she was knocked off to his agent. No money was paid. There was no change of title. The legal title was in plaintiff before the sale, and so remained. There clearly was no sale, *so far as Parker was concerned.* It was simply an unsuccessful attempt at sale. Supposing it honest, it was but a mere trial of the market.

The most favorable position that can be taken for plaintiff, is, that Parker, as agent for defendants, sold to himself individually. But he could not be allowed to act in two capacities. The policy of the law wisely interferes and prevents any such duality. " It is a rule of law, well settled, and founded in the clearest principles of justice and sound policy, that the agent of the seller cannot become the purchaser, or the agent of the purchaser." These relations are utterly incompatible with each other. *Copeland* v. *Mercantile Ins. Co.,* 6 Pick. 204. An agent at a sale, made for his principal, cannot become the buyer. Story's Agency, § § 9, 10, 210, 211.

The defendants deny any assent to the sale, on their part. They claim their right to have that question submitted to the jury. It is not properly before the Court. The plaintiff's counsel has correctly stated the question to be determined, whether or not the instruction given by the presiding Judge was correct.

Nor is it true that Parker was acting for the interests of the defendants in the auction sale, and the sale, therefore, was a fair one and the price being reasonable, the sale should stand.

Parker's interest was to obtain the vessel at as low a price as possible. He protected his interest at the auction sale by means of his friend Rice, and having done this, it does not appear that he interested himself further in the matter. * * * * * The defendants were entitled, at the sale, to Parker's disinterested efforts in their behalf, and it is quite apparent that they did not have them.

But there is another view. The plaintiff, immediately upon taking the vessel at Robbinston, sued the defendants and assumed the vessel as his own, and credited them $16000 for her. If he assumed the vessel, thus making a conversion of her, he should be held to pay the defendants for her, what she was worth.

The opinion of the Court was drawn up by

TENNEY, C. J.—It does not appear in the report, that the claims of the plaintiff, as originally existing, are denied; but that the defendants had not been credited, as a payment, the value of the bark Pilot Fish, which was appropriated by the plaintiff to his own use, was a point in issue.

By the contract between the parties, of March 27, 1854, the plaintiff engaged to make certain advances to the defendants, for the purpose of enabling them to build and complete the bark. And, in consideration of these advances, thus agreed to be made, and which were in fact afterwards made, the bark was to be delivered at a wharf in Boston, as soon after she should be " launched as practicable, as the property of said Parker, as collateral security."

It was agreed by both parties in the contract, if, on the arrival of the vessel in Boston, the defendants could sell her to better advantage than the plaintiff could do, they had the liberty to make the sale, provided the payment should come to the latter, for all moneys, acceptances, and all liabilities, commissions and claims against the vessel.

Evidence was introduced by the plaintiff, tending to show that one of the defendants was in Boston for several weeks, after the arrival of the bark in that place, and was making efforts to sell her, but without success; and that, afterwards, the plaintiff caused her to be properly advertised for sale at auction by an auctioneer, and, at the time and place appointed, a large number of persons being present, she was struck off by the auctioneer, upon the bid of the plaintiff's agent. Evidence was also introduced by the plaintiff, upon which he relied, that one of the defendants consented to the sale so attempted.

The jury were instructed that the defendants were bound by the sale at auction, in Boston, whether they assented to the same or not. And the only question presented is, whether this instruction was correct.

The contract undoubtedly shows that the parties contemplated a sale in Boston, of the bark, after her arrival, by one party or the other, the defendants having the right to make it, in a contingency stated in the contract. No sale was made under this provision, by the defendants.

The instruction to the jury treated the transaction at the time the bark was exposed for sale at auction, as a conclusive sale to the plaintiff. By the contract, the legal title in the vessel was in the plaintiff, at that time, for the purpose of obtaining, from a sale thereof, money to be applied to claims against the vessel and the defendants. The money obtained from the sale, by the plaintiff, was to discharge the defendants *pro. tanto;* and, so far, they had an interest in the bark.

The plaintiff cannot be treated as having acquired, at the auction, any right in the vessel which he did not before possess. The sale to him, being the owner, involves an absurdity. He had authority, under the contract, to make the sale, after

the defendants had failed, under the right given to them to do so, for the benefit of the defendants and his own. He was not in a condition, under their authority in the contract to make sale for their benefit, to become the purchaser. He was interested to obtain her at the lowest price, and his duty to the defendants required him to obtain the greatest price, which it was fairly in his power to do. Though the sale was, in form, made by the auctioneer, the latter acted under the agency of the plaintiff, and his agency cannot be regarded as substituted for that which the plaintiff had, under the defendants. It was still his duty to use all proper means to obtain, at the sale, the full value of the vessel.

The two interests, which an agent has to sell property, and to become the purchaser thereof, are so incompatible, that the law does not allow them to be united in the same person. This principle is well established by the authorities cited by the counsel for the defendants.

The interest of the plaintiff, to purchase the vessel at a low price, is not balanced, in law, by the supposed interest to obtain as much as possible, from the sale, of his claim against the defendants. Whatever remained of his claim, after deducting the receipts arising from the sale, was still outstanding and unpaid.

The occurrences at the auction could have no other effect than to tend to show, in some measure, the value of the bark in the market. How far this would be shown, would depend, perhaps, upon other facts and circumstances in evidence. The value of the vessel was a question of fact, to be settled by the jury, from all the proofs in the case, and the value, as tested by the bid of the plaintiff's agent, which was followed by its being struck off to him, is not conclusive upon the defendants, as a rule of law, and, we think, the instructions being unqualified, were erroneous.

According to the agreement of the parties, the action must stand for trial.

Rice, Hathaway, Appleton, Cutting, and Goodenow, J. J., concurred.